GRIFFIS, P.J.,
dissenting:
¶ 19. The majority finds that a genuine issue of material fact exists as to whether OraClean had sufficient time to remedy the dangerous condition that caused Kar-pinsky’s fall and injuries. I can find no fact in dispute.
¶ 20. The majority determines that OraClean was not entitled to a judgment as a matter of law. In the majority’s opinion, the triable issue was whether the spill had been on the floor long enough for OraClean to have had a reasonable opportunity to clean it up prior to the fall. The majority simply concludes that since the spill may have been on the floor for no longer than five minutes, it is a jury question as to whether that was long enough to create a question of negligence on the part of OraClean. I disagree. I am of the opinion that Karpinsky had the burden to prove that OraClean had a reasonable opportunity to clean up the spill prior to her fall, but did not and was negligent.
¶ 21. Therefore, I respectfully dissent.
A The standard of review for a motion for summary judgment.
¶ 22. In Haggard v. Wal-Mart Stores, Inc., 75 So.3d 1120, 1122 (¶ 1) (Miss.Ct.App.2011), this Court considered a business invitee’s appeal of a summary judgment where the business invitee slipped on a “clear, unknown substance on the floor and sustained injuries.” There, we stated the correct standard for the review of a motion for summary judgment:
The burden of demonstrating that there are no genuine issues of material fact is upon the movant, and the non-moving party must be given the benefit of every reasonable doubt. Further, the' facts must be viewed in the light most favorable to the non-moving party. The non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial. Issues of fact are present where one party swears to one version of the matter in issue and another says the opposite. A material fact is one that tends to resolve any of the issues properly raised by the parties. A fact is material if it is outcome determinative. Additionally, summary judgment is appropriate “where the non-movant fails to establish *108 the existence of an essential element of that party’s claim.”
Id. at 1124 (¶ 8) (emphasis added and citations and quotations omitted).
¶ 23. To prevail on the motion for summary judgment, OraClean had the burden to demonstrate only that there “are no genuine issues of material fact.” Id. Ora-Clean may prevail on the motion if the “non-movant (Karpinsky) fails to establish the existence of an essential element of [her] claim.” Id.
¶ 24. The majority correctly states the law of premises liability. The majority notes that knowledge of the spill is not enough. Indeed, if knowledge alone was sufficient to establish a premises owner’s negligence, then premises-liability claims would be strict liability claims. Such is not the case. Karpinsky, as a plaintiff in a premises-liability claim, must have present some proof of negligence by the premises owner. In paragraph 8, the majority states that “the plaintiff must produce evidence that the owner or operator had actual or constructive knowledge of the dangerous condition as well as a sufficient opportunity to correct it.” (Citing Miller v. R.B. Wall Oil Co., 970 So.2d 127, 132 (¶ 17) (Miss.2007)) (emphasis added).
¶ 25. Yet, in the following paragraph, the majority concludes that “to be entitled to summary judgment, OraClean carried the burden of producing credible evidence that it had neither actual nor constructive knowledge of the spill, or if it had knowledge of it, that it did not have sufficient time to clean it up prior to Karpinsky’s fall.” The majority cites no authority for this legal principle. The majority continues, in the next paragraph, by stating that, “whatever evidence Karpinsky could or could not produce at trial was not an issue until OraClean produced credible evidence at the summary-judgment stage that there were no genuine issues for trial.” Yet again, the majority cites no authority for this legal principle.

B. The movant and non-movant’s burdens of proof, production and persuasion.

¶26. In Daniels v. GNB, Inc., 629 So.2d 595, 600 (Miss.1993), the supreme court held:
The party moving for summary judgment bears the burden of persuading the trial court that no genuine issue of material fact exists, and that they are, based on the existing facts, entitled to judgment as a matter of law. The mov-ant and non-movant bear the burdens of production corresponding to the burdens of proof they would bear at trial. Thus, the movant only bears the burden of production where they would bear the burden of proof at trial. Palmer at 1355. Correspondinyly, the non-mov-ant, provided they would bear the burden of proof at trial on the issue in question, is responsible for produciny supportive evidence of siyniñcant and probative value in opposition to the motion for summary judyment.
(Emphasis added and internal citations and quotations omitted).
¶ 27. In Galloway v. Travelers Insurance Co., 515 So.2d 678, 684 (Miss.1987), the court held:
Our own construction of Rule 56 embodies this concept that when a party, op-posiny summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law. In Chatham v. Gulf Publishing Company, Inc., 502 So.2d 647 (Miss. *109 1987), we reviewed the circuit court’s entry of summary judgment in favor of the defendant in a defamation case. We enumerated the elements of the tort: 1) false and defamatory statement concerning another, 2) unprivileged publication to a third party, 8) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Chatham, 502 So.2d at 649. We then affirmed summary judgment for the defendant based on our holding that the statements involved were not defamatory. Chatham, 502 So.2d at 650. Thus, we affirmed summary judgment where the nonmoving party, who would have had the burden of proof at trial, failed to make a showing sufficient to establish an essential element of the claim.
In the case at bar, Galloway failed to make an adequate showing on an essential element on which he would bear the burden of proof at trial. Therefore, summary judgment in favor of Travelers on this claim was appropriate.
(Emphasis added).
¶ 28. To survive OraClean’s motion for summary judgment, it was Karpinsky, not OraClean, who must produce “supportive evidence of a significant and probative value” that OraClean had sufficient time to clean up the spill prior to Karpinsky’s fall. I am of the opinion that the majority has misstated and misplaced the burden of proof.

C. Whether there was a genuine issue of a material fact in dispute.

¶ 29. I examine whether there were any genuine issues of a material fact in dispute. The majority concludes that OraClean failed to present evidence that it lacked actual knowledge of the spill or that more than five minutes were required to afford it a reasonable opportunity to clean it up. The majority also recognizes that neither Clark nor Karpinsky gave any testimony to indicate either the distance between housekeeping’s physical location and the area where the spill occurred, or the amount of time that would have been required for housekeeping to arrive at the scene after being notified of the spill. Further, Karpinsky offered no evidence regarding OraClean’s policies and procedures with respect to this type of situation. The majority is simply incorrect; based on Daniels and Galloway, Karpinsky, not OraClean, has the burden to prove these issues.
¶ 30. To support its motion, OraClean offered the depositions of the plaintiff and the only eyewitness. Karpinsky testified that she slipped on a liquid but did not really look at it. She did not know if it was water or if it was hot or cold. Karpin-sky had no idea how the liquid got on the floor and did not see any footprints in the liquid. She presented no evidence about how long the spill had been there.
¶ 31. Gail Clark was the only eyewitness. She testified that she went into the Lane Bryant store while her husband went to the bathroom. Clark testified that she did not see any water, cup or spill on the floor when. she went into the store. She also testified that she believed that if a spill would have been there when she entered the store, she would have seen it. Clark testified that she was in the store for “about 5 minutes.” As she left the store, she saw a liquid spill with a cup just outside the store entrance. She remembered seeing a cup with ice still in it. She walked around the cup and about ten seconds later, Karpinsky fell. Clark’s testimony established the spill had been on the floor for less than five minutes. Karpin- *110 sky’s lawyer did not ask any questions of Clark during her deposition.
1132. Karpinsky did not file a response to the motion for summary judgment. However, the day before the hearing, Kar-pinsky’s attorney submitted an affidavit signed by Dempsey M. Levi, Karpinsky’s former lawyer, to oppose the motion. In the affidavit, Levi swore under oath that he has personal knowledge of the matters set forth in the affidavit.[4] Levi’s affidavit offered two documents as exhibits: (1) a transcript of an unsworn recorded statement that Levi took of Clark; and (2) a copy of the Edgewater Mall “Incident Report” regarding Karpinsky’s fall. In the affidavit, Levi stated that:
I was Laura Karpinsky’s former attorney and in connection with that representation I took a recorded statement (a transcript of the recorded statement of Gail Clark is hereby attached to affidavit as Exhibit 1) wherein Gail Clark stated that the spill in front of the Lane Bryant store had been there “quite a while” and that there were tracks, etc. in the spill.
¶ 33. At the hearing on the motion, OraClean’s counsel argued that Clark’s un-sworn recorded statement was hearsay and inadmissible. In response, Karpinsky’s counsel agreed. Her counsel admitted that Clark’s statement was not offered as admissible evidence, but was offered as “impeachment material.” Karpinsky’s counsel argued:
Your Honor, I submit in defense of [OraClean’s counsel’s] allegation that these documents submitted through affidavit are rank hearsay, first off, the recorded statement is [Mississippi Rule of Evidence] Rule 613(a) impeachment material. At trial all I need to do is remind her of the situation [wherein] she gave that recorded statement which is in conflict with what she said at the deposition, and then give her an opportunity to deny or explain. So that’s impeachment material. It’s not hearsay.
¶ 34. Karpinsky offered Clark’s un-sworn recorded statement only to contradict Clark’s sworn deposition testimony, not as substantive evidence. Clark’s recorded statement was clearly hearsay, and was not admissible as substantive evidence at trial. See M.R.E. 801; M.R.E. 802. If offered as a prior inconsistent statement, it can be offered only for purposes of impeachment and cannot be used as substantive evidence. See King v. State, 994 So.2d 890, 898-99 (¶ 30) (Miss.Ct.App.2008).
¶ 35. Mississippi Rule of Civil Procedure 56(e) requires that “opposing affidavits ... on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.” In the majority’s de novo review of the motion for summary judgment, it may not rely upon an unsigned, unsworn transcript of a witness interview to conclude that there was a genuine issue of material fact in dispute. The majority’s holding is contrary to Rule 56 and sets a dangerous precedent.
*111 ¶ 36. In my de novo review of the motion for summary judgment, I accept the statement of Karpinsky’s lawyer that the recorded statement was not admissible evidence; i.e., it was not offered as substantive evidence, but only as impeachment material. Thus, based on Rule 56(e), I am of the opinion it is improper to consider such inadmissible evidence. I also believe it error for the majority to consider the transcript of Clark’s unsworn statement at all.
¶ 37. The incident report, however, is admissible evidence. It could have been simply attached to a response if one had been filed. Moreover, OraClean does not allege that it is improper for the Court to consider it. The incident report, in pertinent part, states:
Date of report: 11/15/02 Type of Incident: Personal Injury

Occurred: 8/24/05-Approx 18:45 to 8124105 Approx 18:45

Reported: 8124/05-18:50

Location of Occurrence: common area in front of Lane Bryant
Subject: Laura Karpinsky
Reported by: Laura Karpinsky
Witness: Vincent Milanese
Witness: N/A
Summary: On 8/24/05 at approximately 1850, Officer Katy Odell responded to a call from Guest Services in reference to an alleged sliplfall. Upon arrival, Officer Odell made contact with the claimant, Laura Karpinsky. The claimant advised that she has slipped and fell [sic] in some water in front of Lane Bryant as she was walking_The witness, Vincent Milanese[ ] (claimant’s son) stated that he was walking with his mother when she slipped [and] fell. Gail Clark ... also witnessed the alleged incident and walked with the claimant to Guest Services but departed without providing any additional information. Guest Services advised prior to the alleged incident a customer had informed of a spill in front of Lane Bryant, at which time Guest Services notified housekeeping. The claimant advised that she slipped prior to housekeeping[’]s arrival because she did not see a wet floor sign. The sign was visible upon security’s arrival[,] and the area was clear of any spill.
[[Image here]]
VI. The Incident. Give the claimant’s version of how the incident occurred and detail below. Specifically, what does the claimant think caused the incident? If the claimant is unable to tell you, reconstruct as much as you can from physical evidence/witnesses. Walking in front of Lane Bryant, slipped an fell in a puddle of water. Claimant also stated that another customer assisted her from the floor and advised her to report the incident to Guest Services.
A. Description of the scene. Type of walkway: Floor [X] ...
Special Conditions — (NOTE: If you did personally observe the following conditions, place a check mark in the box[) ].
1. Foreign substance present? (Water, ice, soda, etc.) [X] YES
Color: Clear Odor: None Amount: 2'X2'
Spill pattern: round Texture: wet Consistency: water
Skid/streak marks: [X] NO Material on shoe soles? [X] NO
How did substance come to be on floor? Unknown
What does substance appear to be? Wader
[[Image here]]
F. Maintenance
1. Indicate the date and time the incident location was most recently:
*112 Date Time By Whom
Patrolled 8/24/05 1825 B. Melching
Mopped 8/24/05 1848 Housekeeping
[[Image here]]
3. Before the incident, was any employee aware of the conditions which you have noted? [X] YES [X] NO
If YES, how did the employee become aware of the condition and who was the employee? Reported to Housekeeping prior to this incident that we had a wet spill. An unknown housekeeping employee responded but arrived after the incident.
4. Were any precautions taken prior to the incident to warn, prevent and/or correct the condition? [X] YES
¶ 38. The facts reported in the incident report are not in dispute. The incident report reveals when Karpinsky’s fall occurred, when it was reported, and when housekeeping mopped up the spill. The incident report also reveals that someone had reported the spill to “Guest Services” prior to Karpinsky’s fall. Yetm the majority recognizes that “the report does not show the time that the unidentified customer reported the spill to Guest Services.” The facts are not inconsistent with the depositions of Karpinsky and Clark. Karpinsky did not offer any evidence from OraClean’s employees or staff who were present about the spill or its timing; when OraClean had notice; what it did once it received notice; why there was a delay in cleaning the spill; or what were the proper procedures for OraClean’s staff to follow in the event of a spill or other dangerous condition. Karpinsky offered no evidence to show that OraClean breached any duty or did any thing wrong.
¶ 39. Considering all of the information before the trial court and this Court, the undisputed facts are:
1. Karpinsky was a business invitee of Edgewater Mall on the date of the incident.
2. Karpinsky was walking just outside of the Lane Bryan store when she stepped in some water on the floor and fell.
3. OraClean did not cause the water to be on the floor.
4. The water was on the floor for no more than five minutes.
5. OraClean was informed of the spill.
6. OraClean notified its housekeeping staff and responded to clean up the spill.
7. Karpinsky slipped and fell before OraClean’s staff arrived to clean up the spill or place a sign.
¶ 40. The majority finds that there is a disputed fact as to whether OraClean had sufficient time to clean up the spill before Karpinsky fell. In essence, the majority claims it is a jury question as to whether OraClean was negligent because less than five minutes was more than a reasonable opportunity to clean up the spill prior to the fall.
¶ 41. The problem with the majority’s reasoning is that Karpinsky presented no evidence to determine when or how Ora-Clean was advised of the spill. She presented no evidence that OraClean did not respond immediately with its staff to clean up the spill. And she presented no evidence that OraClean did not respond in a reasonable and prompt manner.
¶ 42. Karpinsky must show more than just notice. She must establish some negligence, i.e., failure to exercise reasonable care, by OraClean. Karpinsky’s argues in her brief that “reasonable minds could differ as to whether there was sufficient time after notice for the premises owner to warn its business invitees of the dangerous condition.” She cites one case and argues:
*113 [T]he duty of the proprietor is to eradicate the known dangerous condition within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger. J.C. Penney Co. v. Sumrall, 318 So.2d 829, 832 (Miss.1975). Ms. Karpinsky urges that since this is an actual notice/failure to warn case-once the mall had actual notice of the condition, it should have fulfilled its duty to take reasonable measures to warn its invitee of the danger.
In the J.C. Penney case, the Mississippi Supreme Court held that because of the extremely short time span between notice and Ms. Sumrall’s fall, the proprietor had done all it could do by immediately notifying its janitor to come clean the vomit off the floor. The Court spoke of “the limited few seconds” between actual notice and Ms. Sumrall’s fall. Id. at 832.
In contradistinction to the Penney facts, here we face a much longer time span — five minutes by the mall owner’s theory — during which the proprietor and/or its cleaning contractor had ample time to warn of the danger. Put simply, the question becomes whether or not those whom Ms. Karpinsky charges with negligence exercised reasonable diligence within the putative time frame to warn of the danger. This is the type question we let juries resolve....
¶ 43. In Sumrall, the plaintiff slipped and fell in the foyer of a J.C. Penney store. Sumrall, 318 So.2d at 829. The jury returned a verdict for the plaintiff. The evidence established that a customer had vomited in the front of the store. Id. at 830. A store employee witnessed the event, but rather than cleaning up the vomit immediately or warning other customers of the vomit, the employee went to a telephone and called for the janitor to come clean it up. Id. The plaintiff stepped in the vomit and fell as the employee was hanging up the telephone. Id. The plaintiff alleged that the premises owner was negligent in failing to immediately clean up the vomit and warn customers. Id. at 831.
¶ 44. The supreme court ruled that the premises owner’s duty was to eradicate the known dangerous situation within a reasonable time or to exercise reasonable diligence in warning those who were likely to be injured because of the danger. Id. at 832. The court held that “there must be some evidence of negligence given a jury before it can determine that a defendant is guilty of negligence.” Id. at 832. The Court concluded that “[t]he mere fact that a customer succeeded in reaching the vomit and falling before the janitor, the manager and other agents ... had a reasonable opportunity to correct the situation is not sufficient evidence to establish negligence on the part of the defendants. Consequently, there is nothing for the jury to decide.” Id.
¶ 45. Karpinsky’s case is no different than Sumrall. Karpinsky has the burden to offer some evidence of OraClean’s negligence. “The mere fact that [Karpinsky] succeeded in reaching the [spilled water] and falling before the janitor, the manager and other agents ... had a reasonable opportunity to correct the situation is not sufficient evidence to establish negligence on the part of the [OraClean], Consequently, there is nothing for the jury to decide.” Id.
¶ 46. In Hardy ex rel. Hardy v. K Mart Corp., 669 So.2d 34, 36 (Miss.1996), the plaintiff alleged K-mart was on notice of a paint spill before the plaintiff slipped in it. According to the plaintiff, when he told a K-mart employee of the paint spill and his fall, the employee explained that they already knew about the spill and were trying to get somebody to clean it up. Id. The *114 trial court granted K-mart’s motion for summary judgment, and the supreme court affirmed. Id. at 39. The supreme court concluded that whether K-mart had actual notice prior to the spill was irrelevant because it was undisputed that as soon as K-mart learned of the spill it began the steps to clean it up. Id. The court noted the principle in Sum,rail that allows •the premises owner a reasonable time to respond. Id. The majority does not address Hardy.
¶ 47. The majority is correct that Ora-Clean owed Karpinsky a duty. OraClean was required “to exercise reasonable or ordinary care to keep the premises in a reasonably safe condition or [to] warn of dangerous conditions not readily apparent, which [the] owner ... knows of, or should know of, in the exercise of reasonable care.” Fulton v. Robinson Indus., 664 So.2d 170, 175 (Miss.1995).
¶ 48. To establish a breach of the duty, Karpinsky must also show: (1) a negligent act by the defendant caused the dangerous condition; or (2) the defendant had actual knowledge of the dangerous condition but failed to warn the plaintiff; or (3) the dangerous condition remained long enough to provide the defendant with constructive knowledge. Munford, Inc. v. Fleming, 597 So.2d 1282, 1284 (Miss.1992). Actual or constructive knowledge of the spill is not enough. OraClean is not strictly liable for injuries occurring on the premises, nor is it an insurers of its invitees’ safety. Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 295 (Miss.1988); Martin v. Rankin Circle Apartments, 941 So.2d 854, 864 (¶ 45) (Miss.Ct.App.2006). And mere proof that a slip and fall occurred “is insufficient to show negligence on the part of the proprietor[.]” Sears, Roebuck & Co. v. Tisdale, 185 So.2d 916, 917 (Miss.1966). Here, Karpinsky relies on “mere proof that a slip and fall occurred to show negligence, and the majority agrees.
¶ 49. Having reviewed the motion for summary judgment, the pleadings, the admissible evidence offered in support of and in opposition to the motion, I find that there is no genuine issue of a material fact in dispute. I find that Karpinsky had the burden to prove by a preponderance of the evidence that OraClean committed some negligent act, i.e., establish that OraClean did not respond to the notice of the spill in a timely manner. I also conclude that she failed to offer any evidence of a negligent act by OraClean. Accordingly, I conclude that OraClean was entitled to a judgment as a matter of law. I would affirm the trial court.
¶ 50. For these reasons, I respectfully dissent.
ISHEE, J., JOINS THIS OPINION. BARNES, J., JOINS THIS OPINION IN PART.

. The affidavit of a lawyer does not appear to be the type of affidavit contemplated by Mississippi Rule of Civil Procedure 56. In fact, Rule 56(e) requires that the court only consider "opposing affidavits ... on personal knowledge, [which] shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.” Levi was not a witness to Karpinsky's fall. Instead, Levi’s affidavit was only offered to introduce Clark’s unsworn interview transcript. Karpinsky’s counsel admitted that the only way Levi could testify at trial was to impeach Clark, if she gave testimony inconsistent with her prior unsworn statement. See M.R.E 613. In such case, neither Levi’s affidavit testimony nor what he claimed Clark said would be admissible evidence at trial.